### Daniel Boone *vs.* Commerce Insurance Company.

Worcester. January 7, 2008. - April 17, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Practice, Civil,* Summary judgment. *Statute,* Construction. *Insurance,* Motor vehicle personal injury protection benefits. *Motor Vehicle,* Insurance.

In a civil action arising out of the defendant insurance company's refusal to make further payments for the plaintiff's chiropractic treatment (for injuries he suffered in a motor vehicle accident) pursuant to the personal injury protection (PIP) benefits section of a policy the defendant had issued, upon an orthopedic surgeon's conclusion, based on an independent medical examination, that such treatment was unnecessary, the Superior Court judge erred in granting summary judgment in favor of the plaintiff, where the plain language, purpose, and legislative history of G. L. c. 90, § 34M, supported the conclusion that a PIP insurer may refuse to pay for medical bills, based on a physical examination of the claimant by a medical practitioner licensed under a medical specialty different from the treating or billing practitioner. [194-199]

Civil action commenced in the Superior Court Department on June 22, 2001.

The case was heard by *Jeffrey A. Locke,* J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Nelson G. Apjohn* (*John P. Donohue & Daniel P. Olohan* with him) for the defendant.

*Brian W. Murray* for the plaintiff.

The following submitted briefs for amici curiae:

*E. Michael Sloman* for Automobile Insurers Bureau.

*Richard Hodyl, Jr.,* of Illinois, *& Myles W. McDonough* for Property Casualty Insurers Association of America.

*David O. Brink, Bruce Medoff, Erica M.D. Barrie, & Shahan J. Kapitanyan* for Amica Mutual Insurance Company & others.

*Andre A. Sansoucy* for Massachusetts Insurance Federation, Inc.

IRELAND, J. This case presents the issue whether G. L. c. 90, § 34M, fourth par., prevents an automobile insurer from terminating personal injury protection (PIP) benefits based on an independent medical examination (IME) of a claimant by a practitioner licensed under a medical specialty different from the specialty of the treating or billing practitioner. A Superior Court judge granted the plaintiff's motion for summary judgment concluding that the statute required the determination to cease paying PIP benefits be made by a medical practitioner licensed in the same medical specialty as the treating or billing practitioner. The Appeals Court affirmed the judgment of the Superior Court. *Boone* v. *Commerce Ins. Co.*, 68 Mass. App. Ct. 354, 354-355 (2007). We granted the defendant's application for further appellate review. Because we conclude that the language, purpose, and legislative history of G. L. c. 90, § 34M, fourth par., support the conclusion that a PIP insurer may refuse to pay for medical bills, based on a physical examination of the claimant by a medical practitioner licensed under a medical speciality different from the treating or billing practitioner, we reverse the order of the Superior Court granting the plaintiff's motion for partial summary judgment, and grant partial summary judgment for Commerce.

*Facts and procedural background.* The facts underlying this appeal are not in dispute. In December, 1996, the plaintiff, Daniel Boone, was struck by a motor vehicle that was operated by Stephen M. Bonina and insured by Commerce Insurance Company (Commerce). The plaintiff suffered injuries to his head, neck, shoulder, and back.

In January, 1997, the plaintiff commenced treatment with a chiropractor for his injuries. The plaintiff also filed a claim for PIP benefits to cover his chiropractic bills.[1] Commerce paid the bills for the treatment until September 17, 1997.

On September 15, 1997, at the request of Commerce, the plaintiff submitted to an IME conducted by an orthopedic sur-

[1]General Laws c. 90, § 34A, defines the term "[p]ersonal injury protection," as "provisions of a motor vehicle liability policy . . . which provide for payment to the named insured . . . of all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, x-ray, and dental services."

geon who determined that, although the plaintiff's injuries were causally related to the motor vehicle accident, continued medical treatment was unnecessary. Based on this opinion, Commerce terminated PIP benefits on September 17, 1997. Nevertheless, the plaintiff continued his treatment until June 22, 1998, incurring additional bills for chiropractic services that totaled $4,300.

In September, 1998, the plaintiff filed a three-count complaint in the District Court claiming, respectively, that he was injured as a result of Bonina's negligence for which he sought reimbursement for his medical expenses in excess of $2,000; that Commerce breached the terms of its policy by failing to provide PIP benefits; and that Commerce violated G. L. c. 93A and G. L. c. 176D.

On cross motions for partial summary judgment on the two counts against Commerce, the plaintiff argued that, pursuant to G. L. c. 90, § 34M, fourth par., an insurer cannot refuse to pay a bill for medical services submitted by a medical provider licensed under one section of G. L. c. 112 based solely on an examination of the claimant by a medical provider licensed under a different section of G. L. c. 112.[2] The judge allowed Commerce's motion for partial summary judgment and denied the plaintiff's motion for partial summary judgment. The plaintiff appealed.

The Appellate Division of the District Court reversed and ordered judgment in favor of the plaintiff in the amount of $4,300 plus interest and costs. Commerce transferred the case to the Superior Court for a jury trial. The plaintiff and Commerce filed cross motions for partial summary judgment on the two counts against Commerce. A Superior Court judge allowed the plaintiff's motion, denied Commerce's motion, and ordered Commerce to pay the plaintiff $10,755.97, which included attorney's fees and costs. Commerce appealed.

*Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a

---

[2]Here, the treating practitioner was a chiropractor who was licensed under G. L. c. 112, §§ 89-97, and the IME was conducted by an orthopedic surgeon licensed under G. L. c. 112, §§ 2-9B.

matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Here, we owe no deference to the Superior Court judge's decision because it is a ruling of law and involves no credibility or evidentiary determinations. *Doe* v. *Superintendent of Schs. of Stoughton*, 437 Mass. 1, 5 n.6 (2002).

General Laws c. 90, § 34A, requires an insurer to pay PIP benefits for "reasonable expenses incurred . . . for necessary medical . . . services." Moreover, injured claimants are required to cooperate with the insurers by submitting to IMEs, which assist insurers in determining the amounts due. G. L. c. 90, § 34M, third par.[3]

General Laws c. 90, § 34M, fourth par., states, in relevant part:

> "Personal injury protection benefits and benefits due from an insurer assigned shall be due and payable as loss accrues, upon receipt of reasonable proof of the fact and amount of expenses and loss incurred provided that upon notification of disability from a licensed physician, the insurer shall commence medical payments within ten days or give written notice of its intent not to make such payments, specifying reasons for said nonpayment, but an insurer may agree to a lump sum discharging all future liability for such benefits on its own behalf and on behalf of the insured. With respect to such benefits, and to medical coverage contained in [G. L. c. 175, § 113C], *no insurer shall refuse to pay a bill for medical services submitted by a practitioner registered or licensed under the provisions of chapter one hundred and twelve, if such refusal is based solely on a medical review of the bill or of the medical services underlying the bill, which review was requested or conducted by the insurer, unless the insurer has submit-*

---

[3]General Laws c. 90, § 34M, third par., provides in pertinent part: "The injured person shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due." This physical examination is commonly known as an IME. See Miller vs. AMICA Mut. Ins. Co., District Court, Appellate Division, Northern District No. 9521 (Nov. 11, 1998); Galena Chiropractic Office, Inc. *vs.* Amica Mut. Ins. Co., District Court, Appellate Division, Northern District No. 9731 (Sept. 24, 2001).

*ted, for medical review, such bill or claim to at least one practitioner registered or licensed under the same section of [G. L. c. 112] as the practitioner who submitted the bill for medical services . . ."* (emphasis added).[4]

Relying on the language of § 34M, fourth. par., Commerce contends that the same profession requirement only applies "when a refusal to pay a bill for medical service 'is based *solely* on a medical review of the bill or of the medical services underlying the bill.' " We agree.

A general principle of statutory interpretation is that "every word in a statute should be given meaning," *Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc.,* 372 Mass. 353, 358 (1977), and no word is considered superfluous. See *Casa Loma, Inc.* v. *Alcoholic Beverages Control Comm'n,* 377 Mass. 231, 234 (1979), and cases cited. Here, the word "solely" limits the application of the same profession requirement to circumstances where insurers challenge bills solely on the basis of a "medical review of the bill or the medical services underlying the bill." G. L. c. 90, § 34M. A medical review is a "submission of bills and medical records to a practitioner *without a physical examination* of the PIP claimant" (emphasis added), Galena Chiropractic Office, Inc. *vs.* Amica Mut. Ins. Co., District Court, Appellate Division, Northern District No. 9731 (Sept. 24, 2001), to determine if the charges are reasonable and the treatment is necessary. See G. L. c. 90, § 34A (*supra* at 195). In contrast, a "physical examination" involves a claimant undergoing a medical examination by a physician selected by the insurer. G. L. c. 90, § 34M, third par. Because Commerce's refusal to pay is based on an IME rather than a medical review of the bill or the medical services underlying the bill, we conclude that the plain language of the statute makes the same profession requirement inapplicable.

The plaintiff argues that when the third and fourth paragraphs of G. L. c. 90, § 34M, are construed together, the "third paragraph simply grants the authority to an insurer to have a claimant examined by a physician of [its] choice," while the

---

[4]For ease of reference we shall call the italicized portion of G. L. c. 90, § 34M, fourth par., the same profession requirement.

"fourth paragraph expounds upon and explains the authority granted." We disagree. "[W]hen the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present." *Leary* v. *Contributory Retirement Appeal Bd.*, 421 Mass. 344, 348 (1995), quoting *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 321 (1993). Here, where the Legislature used the term "physical examinations" in G. L. c. 90, § 34M, third par., and the term "medical review" in G. L. c. 90, § 34M, fourth par., we should not extend the meaning of medical review to include a physical examination. Moreover, the plaintiff's reliance on Miller *vs.* AMICA Mut. Ins. Co., District Court, Appellate Division, Northern District No. 9521 (Nov. 11, 1998), to support his argument that a "medical review" encompasses an IME or physical examination of a PIP claimant is misplaced. Although the court stated that "an IME constitutes a medical review of the bill or of the medical services underlying the bill," the Miller case does not squarely address the issues presented in this case. In the Miller case, both the treating and reviewing practitioners were chiropractors whereas here, the treating practitioner was a chiropractor and the reviewing practitioner was an orthopedic surgeon.

The plaintiff contends that the same profession requirement applies to a "denial of coverage [by an insurer] based on a 'medical review' of a PIP benefits 'claim' (whether based on a physical examination or not").[5] This argument is unavailing because the plaintiff's interpretation of text ignores the word "solely." *Globe Newspaper Co.* v. *Commissioner of Educ.*, 439 Mass. 124, 129 (2003) (no word of statute is treated as superfluous).[6]

---

[5]The plaintiff's reliance on Nhem v. Metropolitan Prop. & Cas. Ins. Co., District Court, Appellate Division, Northern District No. 9402 (June 4, 1997), is misplaced. He argues that adopting Commerce's interpretation of the same profession requirement would essentially use an IME report "to determine the medical necessity of a differently licensed provider's service [which is] not in accordance with . . . the Nhem decision." We disagree. In the Nhem case, the court allowed the insurer to refuse to pay a claimant's bill based on a standard provider bill audit system. The court stated that the refusal was "not 'based solely on a medical review' of such bill," thus the court did not treat the word "solely" as superfluous.

[6]The plaintiff argues that the "underlying purpose of the [no-fault legisla-

The plaintiff further contends that if Commerce's position is adopted "the fourth paragraph of G. L. c. 90, § 34M, would be rendered . . . completely useless" and an "insurer [would be able to] lawfully terminate [the] PIP benefits of a claimant who received dental injuries if an examining orthopedist, or chiropractor, felt that a medical end result had occurred."[7] He further argues that this scenario would lead to more litigation and delays in payments to injured claimants. These arguments lack merit. Orthopedic surgeons and chiropractors cannot lawfully practice outside the scope of their professional registration and render medical decisions about dentistry. Any person who attempts to practice dentistry without being registered is subject to penalties, G. L. c. 112, § 52, unless a registered physician "deems treatment necessary for the relief of his patient." G. L. c. 112, § 53. Moreover, there is some overlap among practitioners who are licensed in different practice areas. For example, orthopedics is defined as a medical specialty concerned with "the preservation, restoration, and development of form and function of the musculoskeletal system, extremities, [and the] spine"; "chiropractic" is defined as "the relationship between the musculoskeletal structures and functions of the body, particularly of the spinal column and the nervous system." Stedman's Medical Dictionary 289, 1102 (25th ed. 1990). Therefore, a licensed orthopedic surgeon would be qualified to treat most of the same type of injuries that a chiropractor could treat.

The statute's history confirms that our interpretation of G. L. c. 90, 34M, fourth par., is consistent with legislative intent.

tion] was not only to reduce . . . tort litigation and control costs . . . but also to expedite insurance payments to injured parties." See *Flanagan* v. *Liberty Mut. Ins. Co.*, 383 Mass. 195, 196 (1981). We interpret § 34M to create "as far as feasible and reasonable, an harmonious structure faithful to the basic designs and purposes of the Legislature." *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 345 (1978). Toward this end, allowing insurers to deny payments for medical services where the denial is based on an IME by a medical practitioner in a specialty different from the treating or billing practitioner is consistent with the legislative goal of controlling costs and ensuring timely payments of medical bills.

[7] The plaintiff's reliance on Knight *vs.* Trust Ins. Co., District Court, Appellate Division, Northern District No. 9508 (Sept. 11, 1998), to refute Commerce's interpretation of the same profession requirement is misplaced. The Knight case did not deal directly with the issue presented in this case because both the treating and the reviewing practitioners were chiropractors.

*Chipman* v. *Massachusetts Bay Transp. Auth.*, 366 Mass. 253, 256 (1974). The Legislature amended § 34M in 1989 by adding the second sentence of the fourth paragraph, to include the same profession requirement. St. 1989, c. 271. Originally, 1989 House Doc. No. 2865, which proposed to insert G. L. c. 90, § 8C ½, stated: "Any Independent Medical Examination or medical claim review requested by any insurer shall be conducted only by a licensed practitioner of the same specialty licensed to practice as such under the provisions of chapter 112 of the General Laws." The Legislature specifically considered whether to impose the same profession requirement on insurers when their denials were based on an IME and the Legislature rejected this idea. Therefore, "we will not add to a statute a word that the Legislature had the option to, but chose not to, include."[8] *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 9 (1998).[9]

*Conclusion.* For the reasons stated above, we reverse the partial summary judgment entered for the plaintiff, and order the entry of partial summary judgment in favor of Commerce.

*So ordered.*

---

[8]The plaintiff's legislative history argument is not a model of clarity. He argues that the 1989 amendment was proposed initially as legislation "to regulate independent medical examinations for health benefits under the motor vehicle insurance laws," and not related to "no-fault" rights. Although this is true he does not explain the relevance of that history given that the language was ultimately included in G. L. c. 90, § 34M.

[9]Because of our conclusion, we need not address the plaintiff's claim that the failure of Commerce to pay the claimed PIP benefits violated G. L. c. 176D and G. L. c. 93A. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14 (1989) (no violation of G. L. c. 176D, § 3 [9], when "[a]t no time was liability 'reasonably clear' " and no violation of G. L. c. 93A where there is no evidence of bad faith or ulterior motive).