Billings, Thomas P., J.
For the reasons that follow, the defendant’s Motion to Dismiss, brought under Mass.RCiv.P. 12(b)(6), is ALLOWED.
FACTS
According to the Complaint, whose allegations are taken as true for present purposes, the plaintiff (“Ortiz”) was injured on June 9, 2011 in an automobile accident. The vehicle was insured by Progressive Insurance Company, to whom applied for personal injury protection (“PIP”) benefits. Progressive requested an independent medical examination (“IME”), to which Ortiz assented. The defendant (“BME”) sent a confirming letter which, in addition to the date, time and place of the IMB, included the following:
Examining Physician: Eugene R. Boeglin, Jr., DPT, OCS
Exam Type: Physical Therapy Medical Evaluation
The letter was copied to the law firm representing Ortiz in this case.
Ortiz missed the appointment, so BME sent a second letter with the same information, but a new date and time. Ortiz kept this appointment. Mr. Boeglin took a medical history, performed a physical examination, reviewed medical records, and gave an opinion as to Ortiz’s total and partial disability.
*333 Boeglin “was not, and is not, a licensed physician pursuant to M.G.L.c. 112, §2.” In calling him an “Examining Physician,” the Complaint asserts, “BME intentionally deceived Plaintiff into attending an IME conducted by someone who is not a licensed physician pursuant to M.G.L.c. 112, §2.” Its intentwas to deceive Ortiz and others similarly situated “into believing that the physical therapist examiners are in fact physicians.” Claims are asserted under G.L.c. 214, § IB, the Massachusetts Privacy Act, and under Chapter 93A.
DISCUSSION
A. What’s in a Name?
In part, this case depends on what the Legislature meant when, in G.L.c. 90, §34M (para, third), it required that an injured party seeking PIP benefits “submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due.” (Emphasis supplied.) The plaintiff asserts that the term means a medical doctor licensed under G.L.c. 112, §2. The defendant argues that it should be read to include allied health professionals, including physical therapists.
Nowhere in section 34M, or in Chapter 90 as a whole, is the term “physician” defined, and no decision from the SJC or the Appeals Court has addressed the issue before me. [1]
Looking first to “ordinary and approved usage,” Chandler v. County Comm’rs of Nantucket County, 437 Mass. 430, 435 (2002) (citation omitted), however, it means “[a] person skilled in the art of healing; specif: a doctor of medicine,” WEBSTER’S NINTH NEW COLLEGIATE DICTIONARY (1991); “[a] person licensed to practice medicine; medical doctor.” THE AMERICAN HERITAGE DICTIONARY, SECOND COLLEGE ED. (1985).
There is little reason to believe that the Legislature, in enacting section 34M, intended “physician” to mean anything other than a licensed medical doctor, or that if it had intended this, it would have had difficuliy expressing itself. The very next paragraph of the same section, for example, refers to allied health professionals in the following terms:
no insurer shall refuse to pay a bill for medical services submitted by a practitioner registered or licensed under the provisions of chapter one hundred and twelve, if such refusal is based solely on a medical review of the bill or of the medical services underlying the bill, which review was requested or conducted by the insurer, unless the insurer has submitted, for medical review, such bill or claim to at least one practitioner registered or licensed under the same section of chapter one hundred and twelve as the practitioner who submitted the bill for medical services. (Emphasis supplied.)
In Boone v. Commerce Ins. Co., 451 Mass. 192 (2008), the SJC held that the “plain language” of the just-quoted provision required that a records-only review—but not a physical examination—be conducted by a person in the same profession “as the practitioner who submitted the bill for medical services.” It cautioned against “add[ing] to a statute a word that the Legislature had the option to, but chose not to, include.” Id. at 199, quoting Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 9 (1998). Put only slightly differently, “(w]here the Legislature employs terms in one part of a statute but excludes them elsewhere, [a Court] will not imply the existence of those terms where excluded.” Passatempo v. McM-enimen, 461 Mass. 279, 288 (2012).
In fact, the General Laws are replete with instances in which the Legislature, when it wished to expand the term “physician” to include other healthcare professionals, did so in plain English.[2] There are also instances where “physicians” and other providers are included in a single list of healthcare professions, a clear indication that each term—"physician" included—is meant to have a meaning distinct from the others.[3] See Boston Gas Co. v. Century Indem. Co., 454 Mass. 337, 355 (2009) (“Eveiy word . . . ‘must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable’ ”; citation omitted).
The most direct announcement of the statutory meaning of the word “physician” in its unmodified form, however, is within the licensure statute itself (Chapter 112), at section 8A. This provides:
No person may, directly or indirectly, use the title “physician” or display or use the term physician in any title, advertisement, listing of affiliations, communication with the public or in any other manner to indicate or imply in any way that such person offers to engage or engages in the practice of medicine or in the provision of health care services to patients within the commonwealth who is not registered by the board of registration in medicine as a physician under section 2. This section shall not apply to use of the term “chiropractic physician” by individuals licensed and practicing under sections 89 to 97, inclusive, or the use of the term “podiatric physician” by individuals licensed and practicing under sections 13 to 22, inclusive, or the use of the term “physician assistant” by individuals licensed and practicing under sections 9C to 9K, inclusive. A person who violates this section shall be punished by a fine of not less than $100 and not more than $1,000 or by imprisonment for not less than 30 days and not more than 1 year in the house of corrections, or by both such fine and imprisonment.
ExamWorks’ approach undoubtedly facilitates prompt scheduling of IMEs, and correspondingly prompt resolution of claims and payment of providers, *334 all at a reasonable transaction cost. These are all laudable goals in the high-volume, low-margin world of PIP claims administration. I have in mind also that a literal application of the term “physician” likely means that under section 24M, para, fourth, a certification of disability by a physical therapist, a chiropractor, or any professional other than a medical doctor does not trigger the patient’s right to PIP payments—a result likely not desired by Mr. Ortiz or the class he seeks to represent. (See footnote 1, supra, and the Knight case cited therein.) These are concerns, however, for the Legislature, not for a Court in construing a statute whose language, I believe, is plain on this point.
There is more to the motion to dismiss, however, than statutoiy construction. Turning, then, to the two counts pleaded in the Complaint.
B. Count 1: Violation of G.L.c. 214, §1B
Chapter 214, section IB of the General Laws, titled “Right to Privacy,” reads as follows:
A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages.
For the most part, the statute has been applied to the unreasonable, unjustified, and public dissemination of private information, Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 382 n.16, cert, denied, 546 U.S. 927 (2005), though there are suggestions that it may extend to “unreasonable intrusion upon the . . . seclusion of another” or to “intrusive conduct demonstrating pattern of harassment.” Id. Also, “the required disclosure [to an employer] of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest” may violate the statute, even where those facts are not publicly disseminated. Bratt v. International Business Machines Corp., 392 Mass. 508, 518 (1984). The same logic extends to medical testing, provided it is unjustified and the intrusion on the plaintiffs privacy interests is sufficiently substantial or serious. O’Connor v. Police Comm’r of Boston, 408 Mass. 324, 329-30 (1990).
The only dissemination of private information alleged in this case was Boeglin’s report to Progressive of the results of the medical history and physical examination he conducted on the plaintiff, all of which Progressive was entitled, under c. 90, §34M, to receive, and which Ortiz would reasonably have expected it would receive. This was not public dissemination, however. See, e.g., Bally v. Northeastern University, 403 Mass. 713, 720-21 (1989) (public dissemination element lacking in claim involving private university's drug testing program for athletes).
Nor was there any other “unreasonable, substantial or serious” invasion of Ortiz’s privacy. He consented to undergo an IME administered by a stranger. There is no allegation that the medical history or the physical examination was improperly or intrusively conducted; Ortiz’s only complaint is that the examiner did not have the right initials after his name. This did not clear the “substantial or serious” threshold. See O’Connor, supra (rejecting police cadet’s claim under section IB for compulsory urinalysis), and contrast Amato v. District Atty. for Cape and Islands Dist., 80 Mass.App.Ct. 230 (2011) (retention of voluntary DNA sample obtained with the promise it would be destroyed 'if it did not match evidence from a particular crime scene). Count I therefore fails to state a claim upon which relief can be granted.
C. Count 2: Violation of G.L.c. 93A, §§2 & 9
Count II, for violation of Chapter 93A, fares no better. It may be that section 34M’s requirement of a physician conducted IME qualifies as a “statute! ] . . . meant for the protection of the public’s health, safety, or welfare . . . intended to provide the consumers of this Commonwealth protection,” 940 Code Mass.Regs. §3.16(3) (1993); see Caltmlim v. Foreign Car Ctr., Inc., 392 Mass. 228, 235 (1984), such that an IME conducted by a non-physician would violate Chapter 93A if the patient suffered cognizable harm as a result.
It is here, however, that Count II falters, for just as with negligence, proof of unfair or deceptive conduct “in the air, so to speak, will not do.”[4] Only a “person . . . who has been injured by another person’s” unfair or deceptive act or practice may bring a private consumer action. G.L.c. 93A, §9(1). The plaintiff need not allege or prove pecuniary loss, but there must be injury in some form. Noncompliance with a consumer-protection statute or regulation, standing alone, does not “automatically constitute! 1 an ‘injury’ under G.L.c. 93A (... an injury per se). . . There is nothing to suggest that the Legislature ever intended such a result.” Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 801 (2006).
In this case, the Complaint alleges in conclusoiy fashion that “BME, through its notice letter, intentionally deceived Plaintiff into attending an IME conducted by someone who was not a licensed physician pursuant to M.G.L.c. 112, §2" (¶18; see ¶37), and that ’’Plaintiff and the Class have suffered monetary damages as a direct and proximate cause (sic) of BME’s willful and/or knowing violations of M.G.L.c. 93A, §2" (¶49). These “labels and conclusions” are insufficient “to raise [the plaintiffs’] right to relief above the speculative level... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact). ” lannacchtnov. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl Corp. v. Tworhbly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). Missing is any allegation that, for example, the IME was incompetently performed, or that the examiner misinformed Progressive as to Mr. Ortiz’s medical condition, or that he was denied PIP benefits as a *335 result. In the absence of this or the invasion of any other “legally protected interest,” see Hershenow at 799, and discussion in preceding section, Ortiz is not a person who has been injured by any unfair or deceptive practice on the part of ExamWorks. Count II therefore fails to state a claim.
ORDER
For the foregoing reasons, the defendant’s Motion to Dismiss, brought under Mass.R.Civ.P. 12(b)(6), is ALLOWED.

In Knight v. Trust Ins. Co., 1998 Ma‘ss.App.Div. 4 (1998), the Appellate Division of the District Court held that a chiropractor was a “licensed physician” whose notice of disability triggered PIP benefits under c. 90, §34M, para, fourth. In Martin v. Premier Ins. Co. of Mass., Hampden District Court Civil Action No. 1023CV3210 (December 29, 2011), by contrast, the court ruled that section 34M’s requirement, in para, third, that an IME be conducted by a “physician!)” meant a licensed medical doctor—the issue in this case. I have considered the careful analyses of both these decisions, but neither, of course, is binding precedent.

See, e.g., G.L.c. 32A, §17C (“For the purposes of this section, attending physician shall include the attending obstetrician, pediatrician, or certified nurse midwife attending the mother and newly bom child”); c. 118E, §10A (identical); c. 175, §47F (identical); c. 176A, §8H (identical); c. 176B, §4H (identical); c. 176G, §41 (identical); c. 112, §13 (“The term physician and surgeon when used in [certain] sections . . . shall include a podiatrist acting within the limitation imposed by this section”); c. 175, §108B (in health insurance policies, the terms “physician” and “doctor” include licensed dentists “in respect to any oral surgical care, services, procedures or benefits covered by said policy of insurance or health care contract which said persons are licensed to perform”); c. 233, §79G (hearsay exception for certified medical records; “[t]he words ‘physician’ and ‘dentist’.. . shall include chiropodists, chiropractors, optometrists, osteopaths, physical therapists, podiatrists, psychologists and other medical personnel licensed to practice under the laws of the jurisdiction within which such services were rendered”); c. 234A, §4 (physician’s letter of disability from jury service; “[flor the purposes of this section, ‘physician’ shall include any accredited Christian Science practitioner”).

Within Chapter 90 itself, there are sections 221, providing that “healthcare providers” who may request that the Registrar perform a medical evaluation of an operator’s ability to safely operate a motor vehicle are to include “a registered nurse, licensed practical nurse, physician, physician assistant, psychologist, occupational therapist, physical therapist, optometrist, ophthalmologist, osteopath or podiatrist who is a licensed health care provider under chapter 112,” and section 24, which provides that “blood shall not be withdrawn from any party for the purpose of [a blood alcohol test] except by a physician, registered nurse or certified medical technician.”

See Martin v. Herzog, 228 N.Y. 164, 170, 126 N.E. 814 (1920) (Cardozo, J.).