NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-8                                          Appeals Court

 BYRON V. HARTUNIAN, M.D., P.C.  vs.  PILGRIM INSURANCE COMPANY.


No. 14-P-8.

Middlesex.     September 9, 2014. - November 24, 2014.

Present:  Kantrowitz, Grainger, & Hanlon, JJ.


Insurance, Motor vehicle personal injury protection benefits,
     Settlement of claim, Unfair act or practice.  Consumer
     Protection Act, Insurance, Unfair or deceptive act.  Motor
     Vehicle, Insurance.


     Civil action commenced in the Cambridge Division of the
District Court Department on November 7, 2008.

     The case was heard by Severlin B. Singleton, III, J.


     Joseph R. Ciollo for the defendant.
     Francis A. Gaimari for the plaintiff.


     GRAINGER J.  A $990 dispute, reduced shortly before a bench

trial in the District Court to a claim for $188.10, has resulted

in an award totaling $25,343.53 against Pilgrim Insurance

Company (Pilgrim).[1]  Pilgrim now appeals from the decision and

_____

     [1] The $188.10, representing interest on the period during
which Hartunian claimed Pilgrim engaged in bad faith delay in

order of the Appellate Division of the District Court affirming the District Court judgment in favor of Byron Hartunian, M.D., P.C. (Hartunian), on his claim that Pilgrim unfairly delayed payment for orthopedic treatment rendered by Hartunian to the claimant under Pilgrim's policy.  We affirm.

This case arises out of an April 4, 2007, automobile accident in which a passenger was injured, resulting in her need for medical treatment.  The automobile in which she was a passenger was covered by a standard Massachusetts automobile insurance policy (auto policy) issued by Pilgrim.  A personal injury protection (PIP) benefits application was received by Pilgrim approximately ninety days after the accident.  Some ninety additional days thereafter Pilgrim received treatment records and bills from Hartunian for five different dates of treatment.[2]  Pilgrim initially paid $515 to Hartunian, constituting payment for the first two treatment dates of May 15 and June 20, 2007.  Thereafter, Pilgrim paid Hartunian an additional $495 for the remaining three treatment dates of July 19, August 14, and October 2, 2007.  Although these two payments

_____

payment of a claim, was trebled by the trial judge.  To this was added prejudgment interest, attorney's fees and costs in the District Court, and appellate attorney's fees after Pilgrim's unsuccessful appeal to the Appellate Division of the District Court.

[2] Before the plaintiff's bills were received, an independent medical exam (IME) was performed by a physical therapist.

were intentionally $990 less than the total of Hartunian's billings, Pilgrim did not notify Hartunian or his patient of its intention not to pay the $990 within ten days of the submission of the bills. Pilgrim based its nonpayment on its determination that the charges exceeded an amount that was reasonable in comparison to other medical providers in the same geographic area.

After approximately twelve months of demanding payment to no avail, Hartunian commenced suit in the District Court on November 7, 2008, seeking the unpaid $990 portion of his billings, as well as damages and costs pursuant to G. L. c. 93A and G. L. c. 176D. Faced with suit, Pilgrim then issued a payment of $990 to Hartunian's counsel and filed a motion for summary judgment on all counts of the complaint. The motion was allowed on those counts relating to breach of contract and declaratory judgment and denied with respect to the remaining counts. After a bench trial, Pilgrim was found liable to Hartunian for violation of G. L. c. 93A and G. L. c. 176D. Pilgrim filed a timely notice of appeal to the Appellate Division, which affirmed the judgment.

Discussion. We are unpersuaded by Pilgrim's assertion that its refusal to make payment cannot be considered an unfair business practice as a matter of law because it disputed the obligation in good faith. This argument ignores the trial

judge's findings, supported by the record, detailing the breach of Pilgrim's obligation under G. L. c. 90, § 34M, fourth par., to make payment of PIP benefits within ten days or, alternatively, to notify the submitting physician or the claimant of its intention not to pay.  Pilgrim also failed to have the patient examined by a practitioner licensed in the same medical specialty as Hartunian, an orthopedist, during an independent medical examination (IME).  Instead, a physical therapist examined the insured, and Pilgrim denied Hartunian payment on the basis of that examination, among other reasons.

Pilgrim asserts that its use of an IME performed on its behalf by a physical therapist precludes the judge's finding of bad faith as a matter of law.  Relying on the Supreme Judicial Court's decision in Boone v. Commerce Ins. Co., 451 Mass. 192 (2008) (Boone), it points to the fact that both physical therapists and orthopedists are licensed under G. L. c. 112, arguing that, therefore, reliance on a physical therapist's opinion regarding the need for continuing treatment by an orthopedist has been legislatively defined as good faith reliance.  In Boone, the Supreme Judicial Court held that under G. L. c. 90, § 34M, third par., an insurer can refuse to pay a medical bill based on an IME conducted by a physician who need not necessarily be licensed under the same section of G. L. c. 112 as the physician submitting the bill.  Boone, supra at

196.  By contrast, when the insurance company's refusal to pay is based "solely" on "a medical review of the bill or of the medical services underlying the bill," the review must be conducted by a practitioner licensed under the same section of G. L. c. 112.  See G. L. c. 90, § 34M, fourth par., as inserted by St. 1989, c. 271.

While an IME performed by any physician selected by the insurer may be sufficient to satisfy the requirements of § 34M, third par., we reject Pilgrim's assertion that Boone, or any other authority, stands for the proposition that compliance with § 34M automatically insulates an insurer from a claim of unfair settlement practices under c. 93A.  The ability of the reviewing practitioner to assess the need for further treatment is a function of training, experience, and, in many cases, specific area of medical expertise.  Indeed, Boone recognized that not all practitioners licensed under § 112 could appropriately render a medical opinion in all other specialties licensed under § 112; rather, the court acknowledged that licensees "cannot lawfully practice outside the scope of their professional registration." Boone, supra at 198.[3]  Reliance on a different specialty raises a factual question of the insurer's good faith

---

[3] As an example, Boone states that "[O]rthopedic surgeons and chiropractors cannot . . . render medical decisions about dentistry."  Boone, supra at 198.

especially where, as here, the reviewer's area of practice requires less training and education than that of the submitting physician, rather than the reverse.[4]

The only witness at trial, a PIP claims representative from Pilgrim who was not the individual who handled the Hartunian claim, testified that Pilgrim's determination that Hartunian's billings were unreasonable was also based on a review of those billings by a computer program. Neither the specific results of that review nor any evidence about the program was introduced in evidence. In any event, use of a computer program does not excuse failure to comply with the clear requirements of G. L. c. 90, § 34M, fourth par.; on the contrary, its use as a substitute for a practitioner's review of billing statements and underlying services provides an additional basis for an inference of Pilgrim's lack of good faith under c. 93A.[5]

Accordingly the judge found, with support in the record, that Pilgrim forced Hartunian to file suit, and that the delay in payment did not comply with the requirements of § 34M and was

---

[4] We note that in <u>Boone</u>, the insurance company relied on an IME conducted by an orthopedic surgeon to refuse payment to a chiropractor.

[5] By contrast, in the case of <u>Barron Chiropractic & Rehabilitation, P.C.</u> v. <u>Norfolk & Dedham Group</u>, 469 Mass. 800, 801-802 (2014), the insurer appropriately had the IME performed by a licensed chiropractor where the chiropractic services were questioned.

neither reasonable nor in good faith.[6]  There was no error in tripling the award of lost interest resulting from the delay, or in the award of attorney's fees.

Hartunian may submit a petition for appellate attorney's fees to this court in the manner prescribed in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), within twenty days of the issuance of this opinion.  Pilgrim may respond to the petition within twenty days of said filing.

> Decision and order of the
>    Appellate Division
>    affirmed.

---

[6] As the careful review of the Appellate Division panel notes, the judge considered Pilgrim's behavior in the context of G. L. c. 93A, § 11, noting that Pilgrim's actions mirrored those prohibited by G. L. c. 176D.  The judge did not rule, contrary to Pilgrim's assertion, that a violation of G. L. c. 176D was per se a violation of c. 93A, § 11.