NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11584

FLOR ORTIZ[1] vs.  EXAMWORKS, INC.[2]

Suffolk.     November 3, 2014. - March 3, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Insurance, Motor vehicle personal injury protection benefits.
    Motor Vehicle, Insurance. Doctor, License to practice
    medicine. Statute, Construction. Privacy. Consumer
    Protection Act, Unfair or deceptive act. Practice, Civil,
    Complaint, Motion to dismiss. Words, "Physician."



    Civil action commenced in the Superior Court Department on
September 7, 2012.

    A motion to dismiss was heard by Thomas P. Billings, J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Matthew T. LaMothe (Robert E. Mazow with him) for the
plaintiff.
    Mark J. Ventola for the defendant.
    Matthew Iverson & Justin A. Brown, for Premier Insurance
Company of Massachusetts, amicus curiae, submitted a brief.

_____

    [1] On behalf of himself and all others similarly situated.

    [2] Doing business as Boston Medical Evaluation/Examination,
Inc.

David O. Brink, Douglas R. Tillberg, & Melissa C. Buynell, for Government Employees Insurance Company, amicus curiae, submitted a brief.

BOTSFORD, J.  The third paragraph of G. L. c. 90, § 34M (§ 34M), the "personal injury protection" (PIP) statute, provides in part that an injured person claiming PIP benefits "shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required" in order "to assist in determining the amounts due" (emphasis added).  The threshold question in this case is the meaning of the word "physicians" in this provision.  More particularly, the question is whether the word "physicians" refers solely to medical doctors licensed under G. L. c. 112, § 2, or whether the term also includes additional types of licensed health care practitioners.  We interpret the statute to intend the broader definition of the word because it is the one most consonant with the statutory purpose.  Adopting this interpretation, we affirm the order of a Superior Court judge dismissing the plaintiff's complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), but for somewhat different reasons from those that the judge provided.

Facts.[3]  In June of 2011, the plaintiff, Flor Ortiz, was injured in an automobile accident in Massachusetts while riding in a car that Progressive Insurance Company (Progressive) insured.  Following the accident, Ortiz notified Progressive that he sought PIP benefits available under the insurance policy to pay for medical expenses that resulted from the accident.[4] Progressive then engaged the defendant, Examworks, Inc. (Examworks), to arrange an independent medical examination (IME) of Ortiz.  To this end, Examworks separately notified Ortiz and his lawyer in writing that Ortiz was scheduled to undergo a "Physical Therapy Medical Evaluation" on August 25, 2011, to be conducted by "Eugene R. Boeglin, Jr., DPT, OCS," whom the notification characterized as the "Examining Physician."[5]  Ortiz

---

[3] The facts are drawn from the allegations of the complaint and exhibits attached to the complaint, which we accept as true. See Lipsitt v. Plaud, 466 Mass. 240, 241 (2013), and cases cited.

[4] Although the complaint does not specify the type of medical expenses incurred, Examworks's response to Ortiz's G. L. c. 93A demand letter, attached to the complaint, indicates that Ortiz suffered injuries to his neck and back and underwent physical therapy as a result.

[5] In relevant part, the notice sent by Examworks, Inc. (Examworks), stated:

> "Examining Physician:    Eugene R. Boeglin, Jr., DPT,
>                         OCS
> Exam Type:              Physical Therapy Medical
>                         Evaluation"

The notice did not define the initials following Boeglin's name, but there is no disagreement by the parties that the

did not attend the August 25 appointment; Examworks then sent Ortiz and his lawyer a second notice regarding the medical examination, which was rescheduled for September 13, 2011.  Like the first notice letter, the second notice letter indicated that the scheduled examination was a "Physical Therapy Medical Evaluation," to be conducted by "Examining Physician" Eugene R. Boeglin, Jr., DPT, OCS.

Boeglin was a licensed physical therapist, but not a licensed medical doctor under the Commonwealth's physician licensing statute, G. L. c. 112, § 2.  Ortiz attended the September 13 examination conducted by Boeglin, who thereafter prepared a report of the IME that indicated that he took Ortiz's history, physically examined Ortiz, and reviewed Ortiz's medical records.  Boeglin's report included his opinion of the extent of Ortiz's injuries.[6]

Procedural background.  On June 13, 2012, Ortiz sent a demand letter to Examworks alleging multiple violations of G. L. c. 93A, § 2.[7]  Examworks timely responded in a letter dated

_____

initials "DPT" signify "doctor of physical therapy," and the initials "OCS" signify "orthopedic clinical specialist."

[6] Boeglin's report is not in the record before us, and no information has been provided concerning the substance of Boeglin's opinion about the nature or extent of Ortiz's injuries.

[7] The demand letter asserted that Examworks's first notice of examination violated G. L. c. 93A, § 2, in that it deceived Ortiz by indicating that Boeglin was a "physician."  The letter further claimed that this "deception," coupled with the medical

July 10, 2012. Soon thereafter, Ortiz filed this action in the Superior Court on behalf of himself and similarly situated persons. The putative class consists of those injured in an automobile accident who sought PIP benefits, received a notice from Examworks of a scheduled IME to be conducted by a "physician" who was not actually a licensed medical doctor, and then attended an IME conducted by that person. The complaint alleges violations of G. L. c. 112, § 8A, G. L. c. 93A; §§ 2 and 9; and G. L. c. 214, § 1B. It seeks declaratory relief, equitable relief, and damages.

Examworks moved to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (6), for failure to state a claim on which relief could be granted. After a hearing, a judge in the Superior Court allowed Examworks's motion. The judge agreed with Ortiz that the term "physicians," as used in the third sentence of § 34M, third par., is limited to licensed medical doctors. The judge allowed the motion to dismiss, however, on the ground that Ortiz did not sufficiently allege a claim of invasion of privacy, and also failed to allege an injury resulting from Examworks's alleged unfair or deceptive practice as needed to sustain his claim under G. L. c. 93A. We transferred Ortiz's appeal to this court on our own motion.

_____

examination of Ortiz, interfered with Ortiz's privacy in violation of G. L. c. 214, § 1B, and also constituted a violation of c. 93A, § 2.

Statutory framework.  Section 34M is a "critical part" of the Commonwealth's no-fault automobile insurance law, enacted to "reduce the amount of motor vehicle tort litigation, control the costs of automobile insurance, and ensure prompt payment of claimants' medical and out-of-pocket expenses."  Fascione v. CNA Ins. Cos., 435 Mass. 88, 94 (2001).  See Flanagan v. Liberty Mut. Ins. Co., 383 Mass. 195, 198 (1981).  Section 34M, first par., requires that all motor vehicle liability policies in Massachusetts provide PIP benefits.  The term "personal injury protection" is defined as "provisions of a motor vehicle liability policy . . . which provide for payment to the named insured," or to any passenger of the insured's car, "of all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, x-ray, and dental services . . . as a result of bodily injury" caused by the accident, limited to $8,000 "on account of injury to . . . any one person."  G. L. c. 90, § 34A.[8]

When an injured person files a claim for PIP benefits, § 34M, third par., directs that the person "submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed

_____

[8] PIP benefits are to be paid "regardless of fault in the causation of the accident."  Pinnick v. Cleary, 360 Mass. 1, 6 (1971).  See G. L. c. 90, § 34A.

information to assist in determining the amounts due" (emphasis added).  The physical examinations referred to are IMEs.  See Boone v. Commerce Ins. Co., 451 Mass. 192, 195 n.3 (2008).  PIP benefits are due "upon receipt of reasonable proof of the fact and amount of expenses and loss incurred."  § 34M, fourth par. If benefits are due and payable and not paid within thirty days, any "unpaid party" is entitled to bring an action for payment in the District Court, the action is to be heard on an expedited basis, and if the unpaid party prevails, the party is entitled to recover costs and attorney's fees.  Id.

Discussion.  1.  Meaning of "physicians."  The judge, as indicated, ruled that the term "physicians" in § 34M, third par., refers only to medical doctors licensed under G. L. c. 112, § 2,[9] an interpretation that Ortiz also advances.  We consider this question of statutory interpretation de novo. Commerce Ins. Co. v. Commissioner of Ins., 447 Mass. 478, 481 (2006).

The term "physicians" is not defined in § 34M. Accordingly, we give the term its "usual and accepted" meaning, so long as it is "consistent with the statutory purpose." Seideman v. Newton, 452 Mass. 472, 477-478 (2008).  We determine a word's "usual and accepted meanings from sources presumably known to the statute's enactors," such as dictionary

---

[9] Physical therapists are licensed under G. L. c. 112, § 23B.

definitions.  Id. at 478, quoting Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).  The term "physicians" appeared in § 34M as originally enacted in 1970.  See St. 1970, c. 670, § 4.  The term "physician" was defined at that time as a "person licensed to practice medicine; medical doctor", and as "[a]ny person who heals or exerts a healing influence."  The American Heritage Dictionary of the English Language 989 (1969).  This meaning has remained largely the same in the years since the enactment of § 34M.[10]  The term, therefore, includes medical doctors and, more generally, those who engage in the healing arts.  We consider which of these common meanings of the term "physician" most appropriately suits the intent and purpose of § 34M.  See Dominguez v. Liberty Mut. Ins. Co., 429 Mass. 112, 115 (1999), quoting Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513 (1975).

A primary objective of the no-fault automobile insurance statutory scheme was, and is, to "provide an inexpensive and uncomplicated procedure for obtaining compensation for injuries

---

[10] See The Oxford English Dictionary, Vol. VII 807 (1978) (defining "physician" as "[o]ne who practises the healing art, including medicine and surgery"); Webster's Third New International Dictionary 1707 (1993) ("physician" is "a person skilled in the art of healing"; "one duly authorized to treat disease"; "a doctor of medicine"); The American Heritage Dictionary of the English Language 1325 (4th ed. 2006) (defining "physician" as "person licensed to practice medicine; a medical doctor," as one "who practices general medicine as distinct from surgery," and as "person who heals or exerts a healing influence").

sustained in automobile accidents." Dominguez, 429 Mass. at 115. In addition, as the provisions of § 34M, fourth par., make obvious, speed in securing the payment of PIP benefits associated with treating such injuries is of great importance: the benefits are due as expenses are incurred, and if not paid within thirty days after they become due and payable, the claimant who remains unpaid is entitled to bring suit to recover them; the litigation is to be put on a fast track. At the same time, PIP benefits are payable for necessary medical and dental services related to a motor vehicle accident generally -- the statute does not limit the benefits to certain types of medical assistance, services, or procedures[11] -- and in this regard, an insurer is specifically entitled under § 34M, third par., to require that a claimant undergo IMEs in order for the insurer to determine what benefits are properly due. See Boone, 451 Mass. at 195 (IMEs "assist insurers in determining the amounts due"); Brito v. Liberty Mut. Ins. Co., 44 Mass. App. Ct. 34, 37 (1997) (insurer that "has reason to doubt its liability" may require injured claimant to undergo IME). If every IME were required to be performed by a licensed medical doctor, it is obvious that achievement of the no-fault statutory goals of inexpensive, uncomplicated, as well as timely payment of benefits to cover medical expenses would suffer.

---

[11] See G. L. c. 90, § 34A (defining "Personal injury protection").

Moreover, in at least one respect -- where PIP benefits to pay for necessary dental services are involved -- requiring IMEs to be performed solely by licensed medical doctors would render the statute unworkable. Licensed medical doctors do not have the professional authority or competence to evaluate dental services, and would not be able to do so. See Boone, 451 Mass. at 198. See also Hartunian v. Pilgrim Ins. Co., 86 Mass. App. Ct. 670, 672 & n.3 (2014). In our view, an interpretation of "physicians" in § 34M, third par., to mean solely licensed medical doctors would create an unreasonable result that the Legislature did not intend. See Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982) ("We assume the Legislature intended to act reasonably").[12,13]

---

[12] Although practice does not dictate the answer to questions of statutory interpretation, it appears that insurers often if not routinely have required injured claimants to undergo an IME with a practitioner who is not a licensed physician. See Barron Chiropractic & Rehabilitation, P.C. v. Norfolk & Dedham Group, 469 Mass. 800, 801-802 (2014) (insurer required claimant to undergo IME conducted by licensed chiropractor); Hartunian v. Pilgrim Ins. Co., 86 Mass. App. Ct. 670, 673 n.5 (2014) (citing with approval IME conducted in Barron). See also Miller v. Amica Mut. Ins. Co., 1998 Mass. App. Div. 245 (1998) (IME conducted by chiropractor); Olympic Physical Therapy v. ELCO Admin. Servs., 2010 Mass. App. Div. 171 (2010) (IME conducted by physical therapist).

[13] The parties in this case focus on the meaning of "physicians" in the third paragraph of G. L. c. 90, § 34M (§ 34M), but we note that the word "physician" also is used in the statute's fourth paragraph. The first sentence of § 34M, fourth par., provides: "Personal injury protection benefits . . . shall be due and payable as loss accrues, upon receipt of reasonable proof of the fact and amount of expenses and loss

Ortiz argues that the language of § 34M and this court's decision in Boone support his argument. He points to the fact that in § 34M, fourth par., the Legislature provided specifically that before an insurer could refuse to pay a bill for which PIP benefits were sought based only on a medical review of the bill or the medical services "underlying the bill," the insurer was obligated to have the record review conducted by a licensed practitioner holding the same type of professional license as the practitioner whose bill was in dispute; this obligation is referred to in Boone as "the same profession requirement."[14] Boone, 451 Mass. at 195-196 & n.4.

incurred provided that upon notification of disability from a licensed physician, the insurer shall commence medical payments within ten days or give written notice of its intent not to make such payments . . . ." We conclude the statutory purpose of making available efficient, timely, and relatively inexpensive medical, dental, and related services is best served if "physician" in the fourth paragraph of § 34M is, like "physicians" in the third paragraph, interpreted to include not only medical doctors licensed under G. L. c. 112, § 2, but other licensed health care practitioners as well, including physical therapists. See Knight v. Trust Ins. Co., 1998 Mass. App. Div. 184 (1998) (adopting broad definition of "physician" in § 34M, fourth par., to include range of licensed health care providers, and rejecting insurer's claim that term refers only to medical doctors licensed under G. L. c. 112, § 2: under narrow reading of "physician," "a dentist, oral surgeon or other c. 112 practitioner who provided necessary medical treatment to an insured injured in an automobile accident would never be entitled to PIP payments unless the practitioner, or the insured, took the additional step and incurred the extra expense of obtaining and filing a disability certificate from a physician licensed under c. 112, § 2[,] prior to submitting any PIP bill or claim to the insurer").

[14] Section 34M, fourth par., provides in relevant part:

The thrust of Ortiz's argument is that, by embracing the same profession requirement in the record review of bills or services and rejecting it in the context of IMEs, the Legislature intended to restrict those who may conduct IMEs to medical doctors, regardless of the specialty of the practitioner treating the injured claimant, and that Boone supports this reading of the statute.

We disagree with both components of the argument. We begin with Boone. In that case, a chiropractor treated the plaintiff, who had been injured in an automobile accident, for approximately nine months, and the chiropractor's bills were paid on behalf of the plaintiff by the defendant insurer as PIP benefits. Id. at 193. Thereafter, at the insurer's behest, an orthopedic surgeon performed an IME on the plaintiff and determined that the plaintiff did not require continued medical treatment. Id. at 193-194. The insurer terminated further PIP benefits relating to chiropractic services as a result. Id. at 194. The question raised in the case concerned the meaning and

"With respect to [PIP] benefits, . . . no insurer shall refuse to pay a bill for medical services submitted by a practitioner registered or licensed under [G. L. c. 112], if such refusal is based solely on a medical review of the bill or of the medical services underlying the bill, which review was requested or conducted by the insurer, unless the insurer has submitted, for medical review, such bill or claim to at least one practitioner registered or licensed under the same section of [G. L. c. 112] as the practitioner who submitted the bill for medical services."

scope of the same profession requirement in § 34M, fourth par. Id. at 193, 195-196. Based on the language of the statute as well as pertinent legislative history, the court concluded that the same profession requirement, which the fourth paragraph made applicable when an insurer seeks to terminate the payment of PIP benefits based "solely" on a medical record review, should not be read into the IME provisions of the third paragraph of § 34M. See id. at 196-199.[15] But in reaching this result, the court's focus was not on the fact that the practitioner who performed the IME was a medical doctor. In other words, although it was relevant that, as an orthopedic surgeon, the doctor performing the IME was presumably qualified to assess the need for continued chiropractic treatment, see id. at 198, the doctor's status as a person licensed to practice medicine was not the issue. Rather, the only question was whether an insurer permissibly could refuse to pay a bill based on an IME performed by a health care practitioner who was not licensed in the "same profession" as the practitioner whose bill was in dispute. See id. at 193, 196 & n.4. No question about the meaning of

---

[15] Accordingly, the defendant insurer was entitled to refuse to pay PIP benefits based on an IME conducted by a practitioner licensed in a different specialty than the treating practitioner. See Boone v. Commerce Ins. Co., 451 Mass. 192, 193 (2008).

"physicians" appearing in § 34M, third par., was raised, and the court did not discuss the word.[16]

We turn to Ortiz's related point that if the Legislature had intended IMEs to be conducted by licensed nonphysicians, it could have required injured claimants to submit to IMEs conducted by a "licensed" or "registered" "practitioner" in the third paragraph of § 34M, just as it used the term "practitioner" in delineating the same profession requirement in the fourth paragraph of § 34M.  Because such a reading would interfere substantially with the purposes of the no-fault automobile insurance program and the provision of PIP benefits in particular, we decline to interpret those language differences as meaning the Legislature intended "physicians" in the third paragraph to restrict the performance of all IMEs to licensed medical doctors.  "In so large a legislative enterprise [as the no-fault automobile insurance scheme], there are likely to be casual overstatements and understatements, half-answers, and gaps in the statutory provisions," and it is the role of the courts to "interweave the statute with decisions answering the difficulties and composing, as far as feasible and reasonable,

---

[16] Ortiz suggests there is language in Boone indicating that only a medical doctor may conduct an IME.  See Boone, 451 Mass. at 196, 197 n.6.  We do not read these references as indicating that the court was opining in any way on the question whether the term "physicians" in § 34M, third par., refers only to licensed medical doctors.  This question simply was not raised by the case.

an harmonious structure faithful to the basic designs and purposes of the Legislature."  Mailhot v. Travelers Ins. Co., 375 Mass. 342, 345 (1978).[17]

In sum, we conclude that the word "physicians" as it appears in § 34M, third par., encompasses not only medical doctors licensed under G. L. c. 112, § 2, but also other appropriate licensed or registered health care practitioners, including physical therapists licensed under G. L. c. 112, § 23B.

2.  Disposition of motion to dismiss.  We review de novo the judge's dismissal of Ortiz's complaint under Mass. R. Civ. P. 12 (b) (6).  Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 676 (2011).  The question is whether the complaint's factual allegations are "'enough to raise a right to relief above the speculative level' . . . .  What is required at the

_____

[17] Ortiz also contends, in accordance with the judge's reasoning, that as other statutes demonstrate, if the Legislature had intended the term "physicians" to include certain nonphysician practitioners, it would have said so explicitly.  He points to a statute in which the Legislature specifically has indicated that the term "physician" includes other practitioners.  See G. L. c. 233, § 79G (defining "physician" to include "chiropodists, chiropractors, optometrists, osteopaths, physical therapists, podiatrists, [and] psychologists").  Certainly, we "may turn to similar statutes to construe the meaning of words" (quotation and citation omitted).  Commonwealth v. Jean-Pierre, 65 Mass. App. Ct. 162, 164 (2005).  Regardless of the manner in which the word "physicians" is defined elsewhere in the General Laws, however, the task at hand is to construe the word in light of the intent and purpose of the Legislature in enacting § 34M, see Baccanti v. Morton, 434 Mass. 787, 794 (2001); the definition or scope of the term in other statutes is not dispositive.

pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).

a. Claim under G. L. c. 214, § 1B. The complaint alleges that Examworks's IME notice letters, and the subsequent examination of Ortiz, interfered with Ortiz's privacy interests in violation of G. L. c. 214, § 1B. With regard to injury, the complaint alleges that Ortiz was obliged to sacrifice his personal time to attend the IME, that Boeglin touched Ortiz during the IME without legal authorization to do so, and that Ortiz divulged information to Boeglin regarding his car accident, his injuries and his personal health information during the IME.

"To sustain a claim for invasion of privacy [under G. L. c. 214, § 1B], the invasion must be both unreasonable and substantial or serious." Nelson v. Salem State College, 446 Mass. 525, 536 (2006). See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-518 (1991). The complaint fails to allege an actionable interference with Ortiz's privacy because § 34M, as we have interpreted it, authorized Examworks, on behalf of Progressive, to require Ortiz to undergo an IME conducted by a physical therapist to "assist

in determining the amounts due."  § 34M, third par.  See
Schlesinger, supra at 519, 521 (action not "serious" or
"substantial" interference with privacy if, among other things,
it "had a legitimate business purpose"); Bratt v. International
Bus. Machs. Corp., 392 Mass. 508, 520 (1984) ("legitimate
countervailing business interests . . . may render the
disclosure of personal information reasonable and not actionable
under" § 1B).  Because the examination was authorized under
§ 34M, the invasions of privacy associated with its taking place
were "justified."  See Schlesinger, supra at 518.

    b.  Claim under G. L. c. 93A.  The complaint alleges that
the IME notice letters that Examworks sent to Ortiz representing
that Boeglin was an "[e]xamining [p]hysician" violated G. L.
c. 93A, §§ 2 and 9, because they "intentionally deceived" Ortiz
and led him to attend an IME conducted by Boeglin who was not,
in fact, a licensed medical doctor, even though § 34M required
that he be such a person to conduct an IME.  It further alleges
that Examworks violated G. L. c. 112, § 8A, resulting in an
additional violation of G. L. c. 93A, § 2.[18]  The complaint
incorporates into the c. 93A claim the injuries alleged in the

_____

    [18] General Laws c. 112, § 8A, prohibits a person "who is not
registered by the board of registration in medicine as a
physician under" G. L. c. 112, § 2, from using "the title
'physician' . . . in any . . . communication with the public
. . . to indicate or imply in any way that such person offers to
engage or engages in the practice of medicine or in the
provision of health care services to patients within the
[C]ommonwealth."

interference with privacy claim -- that Ortiz took personal time to submit to the IME, divulged personal information during the examination, and was touched by Boeglin, who did not have the statutory authority to do so.

Assuming for argument that a claim based on an alleged violation of § 34M properly may be raised against a company, like Examworks, that is not itself an insurance company, we agree with the judge that the complaint does not sufficiently allege actionable unfair or deceptive conduct on the part of Examworks.  Examworks's IME notice letters on which this claim depends state that Ortiz had been scheduled to undergo a "[p]hysical [t]herapy [m]edical [e]valuation," and that the "[e]xamining [p]hysician" was "Eugene R. Boeglin, Jr., DPT, OCS" (emphasis added).  Ortiz does not claim that Boeglin was not a licensed doctor of physical therapy or that he was not an orthopedic clinical specialist.  See note 5, supra.  The notice letters, therefore, accurately described Boeglin's qualifications.[19]  Cf. Gossels v. Fleet Nat'l Bank, 453 Mass. 366, 373 (2009) (bank did not violate c. 93A by accurately telling presenter of check that presenter was not required to indorse check).  That he was described as the "[e]xamining [p]hysician" does not render the notice letters unfair or

_____

[19] The letters were sent to both Ortiz and his counsel. Even if Ortiz did not know what "DPT, OCS" stood for, presumably his counsel either knew or was in a position to determine.

deceptive, as opposed to somewhat confusing.  In any event, if, as appears to be the case, Ortiz's claim is that the notice letter was actionably deceptive because it led him to believe that Boeglin was a licensed medical doctor as (he claims) § 34M required, the claim must fail because § 34M does not require the IME to be performed by a medical doctor licensed under G. L. c. 112, § 2.

3.  Conclusion.  Examworks's motion to dismiss the complaint for failure to state a claim was properly allowed.

Judgment affirmed.