LYNCH, Circuit Judge. This is an appeal from a purported denial of a motion for leave to amend a complaint after certain court proceedings. We affirm, on the particular facts of this case, concluding that the district court did not abuse its discretion. Our reasons are best understood from our recitation of the facts. I. In September 2009, Diane Hamilton, Lynne P. Cunningham, and Claire Kane (“plaintiffs”) filed suit in the District of Massachusetts against a group of healthcare entities allegedly affiliated with Partners Healthcare System, Inc. (“defendants”),[1] alleging that the defendants’ compensation practices violated the Fair Labor Standards Act (“FLSA”), 29 U.S.C. § 201 et seq., the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1001 et seq., and the Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. § 1961 et seq.[2] This was one of at least twenty-nine such cases filed by plaintiffs’ counsel across the country, including four other cases filed in the District of Massachusetts, all involving virtually identical complaints.[3] It purported to be brought as a class action.[4] The complaint stated that the plaintiffs were “[a]t all relevant times ... employees under the FLSA, employed within this District and residing] within this District,” but did not describe which of the defen-' dants actually employed the named plaintiffs and failed to state whether the plaintiffs worked more than forty hours per week, In total, plaintiffs’ complaint listed twenty-seven healthcare facilities associated with the named defendants and more than 100 “affiliated” healthcare facilities. In October 2009, defendants filed an answer to plaintiffs’ complaint, along with a motion to dismiss plaintiffs’ RICO claim. After briefing on the motion to dismiss, but before the district court , ruled on the motion, the parties notified the district court that they had 'entered into a structured mediation process. The mediation resulted in two successive motions for preliminary approval of class and collective action settlements,- which were heard by the district court. On December 27, 2010, the district court rejected the first proposed settlement, stating,- inter alia, that there was potential for “fairly substantial conflict among class members” because the contemplated settlement could not account for potential disparities in the damages suffered by class members. Several months later, the district court rejected an amended settlement proposal on March 9, 2011, reiterating its concern regarding class conflict and stating that it could not find the proposed settlement to be fair, adequate, and reasonable. The plaintiffs were thus on notice of potential problems as to the certification of a putative class based on their pleadings. Settlement negotiations broke down after the district court’s second ruling. On April 1, 2011, defense counsel sent a letter to plaintiffs’ counsel with a number of requests, three of which related to plaintiffs’ federal claims as stated in their complaint. First, defense counsel insisted that plaintiffs’ counsel dismiss all defendants, remove references in the complaint to “Health Centers” and “Affiliates” that did not employ any of the named' plaintiffs, and file an amended complaint containing allegations sufficient to establish employment relationships between the named plaintiffs and each defendant. To support this request, defense counsel cited Manning v. Boston Medical Center Corp. (“Manning I”), No. 09-11463, 2011 WL 796505 (D. Mass. Feb. 28, 2011), aff'd in part, vacated in part, remanded, 725 F.3d 34 (1st Cir. 2013),[5] which dismissed a virtually identical complaint based in part on its failure to identify which defendant the named plaintiffs worked for, id. at *1. Defense counsel also cited Nakahata v. New York-Presbyterian Healthcare System, Inc., No. 10 Civ. 2661, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011), aff'd in part, vacated in part, remanded, 723 F.3d 192 (2d Cir. 2013),[6] which found another substantially similar complaint to be deficient because of its “failure to specify which entity, among the many named defendants, employed the respective plaintiffs,” id. at *4. Second, the letter urged plaintiffs’ counsel to dismiss their RICO and ERISA claims, which defense counsel contended were “unfounded.” As support, defense counsel cited seven district court cases dismissing identical RICO .claims, including three District of Massachusetts cases, and two district court cases dismissing identical ERISA claims, including Manning I, in which the court found that the plaintiffs’ ERISA claims “fail[edj as a matter of law,” 2011 WL 796505, at *2. Third, the letter requested that plaintiffs’ counsel amend and replead the FLSA claims to comply with Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Defense counsel warned plaintiffs’ counsel that other district courts had dismissed nearly identical claims, citing Manning I, which described the dismissed complaint as an “aggregation of conclusory statements and general allegations,” 2011 WL 796505, at *2; Pruell v. Caritas Christi (“Pruell I”), No. 09-11466, 2010 WL 3789318 (D. Mass. Sept. 27, 2010), which dismissed the plaintiffs’ FLSA claims for failing to allege the plaintiffs’ weekly wages and hours worked or even that the plaintiffs worked more than forty hours per week, id. at *3; and DeSilva v. North Shore-Long Island Jewish Health System, Inc., 770 F.Supp.2d 497 (E.D.N.Y. 2011), which dismissed the plaintiffs’ FLSA claims for failing to satisfy the “minimal burden” of providing “some approximation of the overtime hours that [plaintiffs] worked,” and for failing to identify the type and nature of the purportedly unpaid work or training, id. at 510. Despite the letter, plaintiffs’ counsel informed defense counsel on April 12, 2011 that they had no intention of repleading any of their claims or providing any more specificity prior to a status conference. Given plaintiffs’ statement that they would not seek to replead, defendants filed a motion for judgment on the pleadings addressed to all of plaintiffs’ claims on April 19, 2011. Plaintiffs opposed the motion and, in their memorandum in opposition, included a request to replead “[s]hould the Court grant defendants’ motion.” Months later, the district court held a scheduling conference on June 9, 2011. By this time, the district court had reviewed a total of 58 pages of pleadings and disposi-tive motions, 145 pages of briefing associated with the dispositive motions, 125 pages of motions to approve settlement proposals, and 612 pages of relevant exhibits.[7] During the -conference, the following exchange' occurred between the district court and plaintiffs’ counsel: THE COURT: ... You should understand I’m not going to permit amended pleadings in this matter. These are the pleadings. We have been around on this enough, so this case will rise and fall on the state of the pleadings- after two years. [PLAINTIFFS’ COUNSEL]: If I may be heard on that, your Honor, just briefly, very briefly, I would say. THE COURT: What do you want, do you want to rebrief the thing altogether? [PLAINTIFFS’ COUNSEL]: ,The case has taken a long time to get to a preliminary motion to dismiss stage, and the parties spent a long time in mediation, and as part of that mediation, we agreed as a courtesy to the defendants to dismiss the individual defendants. That was never approved by the Court, so the individual defendants are still around, but there certainly has been a lot of case law change in the last two years, particularly in the District of Massachusetts. THE COURT: But you were afforded an opportunity by the defendants, to tidy up your pleadings and afforded that opportunity in April, and so now you tell me when I set it down for hearing for judg-. ment on the pleadings that you want to be able to take my temperature on the judgment on the pleadings and then file another complaint? [PLAINTIFFS’ COUNSEL]: We didn’t feel that we would be in a position with the Court, the defendants were asking us to do that. We didn’t believe that the Court would entertain an amended complaint while the motion on the pleadings had been fully briefed. THE COURT: Well, what makes you think that I’ll do it afterwards? Look it, I have taken several bites of this case. I’ve seen it in what I consider to be inappropriate posture for class settlement. I saw it originally in a motion to dismiss posture, but this is not going to be Shahrazad, so you now think you want to file an amended complaint? [PLAINTIFFS’ COUNSEL]: We would anticipate that the Court would have since the motion was fully briefed, if there was— THE COURT: No, I asked you, is it your view that you now are not satisfied with the pleading you’ve submitted? [PLAINTIFFS’ COUNSEL]: Well, in light of the recent decisions that have come down, particularly yesterday, from Judge Saylor,[8] we would request the ability to submit an amended complaints [9] All of the questions raised by the Court there are very easy for us to remedy, and it’s far more efficient for the Court and for— THE COURT: No, let me tell you, efficiency is when I say you don’t get a chance to replead, and I’m about at that point. Now if you’re telling me that you want to replead, I’ll consider it, but this is it. You’ve had a great deal of litigation in a number of different fora. These are not new issues to be perfectly candid, they’ve been out there for some period of time, and I don’t really fully understand why I should permit this. [PLAINTIFFS’ COUNSEL]: Well, your Honor— THE COURT: What are you going to do? What is it that provided an epiphany in Judge Saylor’s decision? [PLAINTIFFS’ COUNSEL]: Well, the complaint was dismissed with prejudice. That was the defining moment. The courts have liberally allowed amendments to pleading. When the case was initially filed, we had numerous cases where on these very similar pleadings, as the defendants point out, had been successful. As the case law has been developing, courts are now raising the standard, it appears, as to what level of detail you need, but the situation that we’re in— THE COURT: What are you going to do? What is this amended complaint going to do? [PLAINTIFFS’ COUNSEL]: It would answer the questions that the courts have raised, it would provide additional detail as to who the defendants are. We believe that we’ve sufficiently alleged that the defendants are this entity, but we can specifically allege, as we have in the 20 affidavits that were submitted with the notice motion, where these individuals worked, who supervised them and the type of work they did. The evidence in this case is going to be extremely strong on behalf of these clients. THE COURT: Look it, you have to make it over the pleading hurdle, and now I schedule it for a hearing on your pleadings, and you view this as kind of an interim undertaking that we’ll see how this one turns out and then we’ll ask for another pleading. You have to come to rest on your pleadings, and- if you’re telling me that if you have not come to rest on your pleadings, I want to understand what it is that you have recently learned that you didn’t know before. [PLAINTIFFS’ COUNSEL]: That the district courts in Massachusetts are looking for more specificity. THE COURT: And the Southern District. [PLAINTIFFS’ COUNSEL]: And the Southern District of New York are looking for more specificity as to the defendant that you specifically worked for, which location you worked at of this large entity, specifically perhaps the number of hours over 40 that you worked, what your job title was, details like that. Those are details that we in the notice pleading that we’ve done in the past has never been subject to scrutiny and has been accepted. THE COURT: Of course it has, it’s been subject to scrutiny throughout, it was subject to scrutiny by Judge Zobel in Manning, it was subject of scrutiny by Judge Saylor, has been for some time. This is no big surprise, Iqbal has been around for awhile now, and this problem, which is a significant one, has been out there for some time, so I’m a little perplexed about the impact that this has on judicial efficiency. At the end of the scheduling hearing, after hearing from defense counsel, the district court engaged in the following exchange with the parties: THE COURT: Well, I’m not going to permit the amendment. It’s going on this complaint. You’ve had plenty of time. You’ve been put on notice of potential deficiencies here including a very detailed letter from the defendants calling to your attention their intention to file judgment on the pleadings, and you ignored it on the benighted assumption that there was going to be some continued opportunity for resurrection. This is the pleading. I’ll evaluate this pleading. If I think it is insufficient, I’ll dismiss, enter judgment on it, but there’s not going to be a repleading at this stage after all of this. So we’re on for August 3rd. Is there anything else that we need to take up here? [DEFENSE COUNSEL]: Not on our behalf, your Honor. [PLAINTIFFS’ COUNSEL]: Not on our behalf, your Honor. Please note my exception to the Court’s ruling. THE COURT: Well, I haven’t had a pleading submitted to me, but I’m telling you ahead of time that having had this in front of me, that’s what I’m going to do. Now if you want to test it by filing a new pleading, I suppose you can. That’s up to you. It’s not as if you haven’t filed lots of paper, but this is a fairly serious matter to file late like this and not bother to take the time to plead it as fully as the developing' case law suggests and to wait until the last moment to hold out the prospect that perhaps you will in two weeks. Not acceptable. We’re in recess. ■ After the hearing, a docket entry was entered entitled “ELECTRONIC Clerk’s Notes for proceedings held before [the district court],” stating, inter alia, that “Plaintiff’s oral Motion for Leave to File an Amended Complaint is DENIED.” Despite the court’s invitation, plaintiffs failed to file a motion for leave to amend with a new pleading between the June 9, 2011 scheduling conference and the August 3, 2011 hearing on defendants’ motion for judgment on the pleadings, which had been scheduled at the June conference. At the August- hearing, the district court noted that plaintiffs had “plenty of opportunity to assess the shortcomings” of their complaint, but had failed to seek leave to file an amendment. The court stated that, for this reason, it would rule on defendants’ motion on the basis of the complaint as it stood. The court did not rule on the motion for judgment on the pleadings for over a year, Plaintiffs did not seek leave to amend in the interim. On September 30, -2012, the district court issued an electronic order granting the defendants’ motion for judgment on the pleadings as to all of plaintiffs’ claims. The court explained the rationale for its September 2012 electronic order in a memorandum and order issued nearly four years later on July 21, 2016.[10] In its explanation, the court recounted that, during the June 9, 2011 scheduling conference, plaintiffs’ counsel h'ad “voiced the possibility that [plaintiffs] might seek' leave to amend, but .'.. never followed through with a proper'motion to amend.” II. Plaintiffs argue on appeal that the district court’s response to their June 9, 2011 oral request is properly reviewable, despite their not having filed a written motion for leave to amend, because the court heard from both parties and said that it would not permit plaintiffs to amend their complaint if they were to file a formal motion. Plaintiffs also argue that the district court erred when it dismissed their complaint with prejudice. We will assume, without deciding, that plaintiffs are correct with respect to the reviewability of their June 9, 2011-.oral request, so we move to the merits of their challenge. We review a district court’s denial of a motion for leave to amend for abuse of discretion, “deferring to the district court for any adequate reason apparent from the record.” Universal Commc’n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007) (quoting Resolution Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). Based on the cumulative thrust of the following reasons, we find no such abuse here. ' First, by no later than April 1,- 2011, plaintiffs were admittedly fully aware of the defects that at least nine district courts had found in their pleading.[11] Defense counsel highlighted all of these defects and demanded correction. And plaintiffs’ counsel themselves later admitted that there had been “a lot of case law change” in the two years since the suit had been filed. Second, plaintiffs acknowledged before the district court that it would have been “very easy” for them to eliminate the defects in their complaint. Third, rather than filing a motion for leave to amend with some modicum of dispatch, plaintiffs delayed—waiting until June to even broach the subject directly with the court.[12] Fourth, and most importantly, when asked point blank why they did not do what they say they could have done upon receiving defense counsel’s letter, plaintiffs’ counsel gave the district court' an explanation that could not have been correct—i.e., that they “didn’t believe that the Court would entertain an amended complaint while the motion on the pleadings had been fully briefed,” which, of course, it had not been. As a result, the district court did not err in concluding' that plaintiffs intentionally delayed in an effort to force the defendants to brief a motion and the court to do the work of deciding the motion, all based on a complaint' that plaintiffs were apparently treating as a.risk-free trial balloon. We emphasize that it is not so much the length of plaintiffs’ delay but rather the manner in which they seem to have exploited the delay that justifies the district court’s ruling. Cf. Kay v. N.H. Democratic Party, 821 F.2d 31, 34 (1st Cir. 1987) (finding that three months constituted undue delay where plaintiff • failed to offer any justification for the delay); Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (same finding for a delay of four months). Finally, when the court—after explaining why it would not allow amendment— nevertheless expressly offered plaintiffs an opportunity to file a formal motion with an amended pleading wheh the issues were fresh, plaintiffs decided not to do so. As a result, we have no proposed pleading to consider. On such a record, we cannot accept the contention that the district court was required to allow leave to amend. Affirmed. . Plaintiffs voluntarily dismissed their claims against two hospital executives named as defendants. . An additional cause of action for estoppel was dismissed by stipulation of the parties. . We have called these lawsuits "hospital compensation cases.” Pruell v. Caritas Christi ("Pruell II”), 678 F.3d 10, 14 (1st Cir. 2012). Three other hospital compensation cases have reached this court. In Cavallaro v. UMass Memorial Healthcare, Inc. (“Cavallaro II”), 678 F.3d 1 (1st Cir. 2012), we affirmed the district court’s dismissal of the plaintiffs’ state law claims but remanded to allow plaintiffs “one last amendment” with respect to their federal claims. Id. at 10. In Pruell II, we affirmed the district court’s dismissal of the plaintiffs' FLSA claim but remanded to provide plaintiffs with "a final opportunity to file a sufficient complaint.” 678 F.3d at 15. And in Manning v. Boston Med. Ctr. Corp. ("Manning II”), 725 F.3d 34 (1st Cir. 2013), we vacated the district court’s dismissal of certain claims against two of the defendants, affirmed its dismissal of similar claims against a third defendant, and upheld its denial of plaintiffs’ request for leave to amend their complaint a second time to correct remaining deficiencies. Id. at 39, 42, 61. .Plaintiffs later filed a separate action in state court, asserting state law claims based on the same facts underlying their federal claims. The defendants removed the state action to federal court in October 2009, The state law claims were ultimately dismissed along with the federal claims, The district court’s dismissal of the state law claims is not on appeal, , Manning I was later affirmed in part and vacated in part by this court in Manning II, which also upheld the district court's denial of the plaintiffs' request for leave to file a second amended complaint, 725 F,3d at-61; see supra note 3. . The Second Circuit later affirmed Nakahata with respect to its dismissal with prejudice of, inter alia, the plaintiffs’ FLSA and RICO claims, but remanded to allow the plaintiffs to replead their FLSA claims. Nakahata v. New York-Presbyteilan Healthcare Sys., Inc., 723 , F,3d 192, 195 (2d Cir. 2013), . We assume that the district court had read the documents associated with the motion for judgment on the pleadings, which had been filed weeks earlier. . Plaintiffs’ counsel was referring to Cavallaro v. UMass Memorial Health Care Inc. ("Cavallaro I”), No. 09-40152, 2011 WL 2295023 (D. Mass. June 8, 2011), vacated sub nom., 678 F.3d 1 (1st Cir. 2012), which had been issued the prior day and which had dismissed with prejudice substantially identical claims to those pressed by plaintiffs here. See id. at *6-7. . Plaintiffs could no longer amend as a matter of course under Fed. R. Civ. P. 15(a)(1) because more than twenty-one days had passed since defendants filed their answer. . The court also granted defendants’ motion for judgment On the pleadings as to plaintiffs’ state law claims in. a separate memorandum and order issued that same day. . -Prior to .plaintiffs’ announced refusal to amend on April 12, 2011, there were at least six district court cases dismissing similar FLSA claims filed by plaintiffs’ counsel, at least eight district court cases dismissing similar RICO claims filed by plaintiffs’ counsel, and at least five district court cases dismissing similar ERISA claims filed by plaintiffs’ counsel. See DeSilva, 770 F.Supp.2d at 547-48 (dismissing FLSA, RICO, and ERISA claims); Manning I, 2011 WL 796505, at *3 (same); Sampson v. Medisys Health Network, Inc., No. 10-CV-1342, 2011 WL 579155, at *10 (E.D.N.Y. Feb. 8, 2011) (dismissing FLSA and RICO, claims); Nakahata, 2011 WL 321186, at *3-5 (same); Pruell I, 2010 WL 3789318, at *5 (dismissing FLSA, RICO, and ERISA claims); Wolman v. Catholic Health Sys. of Long Island, No. 10-CV-1326, 2010 WL 5491182, at *7 (E.D.N.Y. Dec. 30, 2010), aff’d in part, rev’d in part sub nom. Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106 (2d Cir. 2013) (dismissing FLSA and RICO claims); Cavallaro v. UMass Mem’l Health Care Inc., No. 09-40152, 2010 WL 3609535, at *1 (July 2, 2010) (dismissing RICO claim); Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. 9-379, 2010 WL 597475, at *7 (W.D. Pa. Fob. 16, 2010) (dismissing RICO and ERISA claims); Camesi v. Univ. of Pittsburgh Med. Ctr., No. 09-85J, 2010 WL 235123, at *1 (W.D. Pa. Jan. 11, 2010) (dismissing ERISA claims). We assume plaintiffs- counsel was familiar with these rulings in their other cases. Moreover, defense counsel's April 1, 2011 letter specifically referenced many of these cases. . We do not count the period of the settlement' negotiations in 'assessing the period of delay. Plaintiffs argue that their settlement negotiations were "a valid reason to ‘delay’ seeking leave to file an amendfed] complaint.” But the parties' settlement discussions and exploration of class certification between the filing of plaintiffs’ complaint on September 3, 2009 and the termination of mediation on March 30, 2011 provided plaintiffs’ counsel with an opportunity to decide whether and how to change its pleadings. In any case, plaintiffs’ counsel’s failure to even bring up the subject of an amended complaint until the scheduling conference— despite being put on notice of their complaint's deficiencies by April 1, 2011—itself constituted delay that prejudiced defendants and the district court. Defendants had to file nearly 300 pages in support of their motion for judgment on the unamended pleadings, which the district court had to read and consider, and was preparing to rule oh by the time of the scheduling conference.